All right, I have case 23-3029, United States v. Kearn. You may proceed, Mr. Brown. Good morning, Your Honor. It's James Brown for the United States. Your Honor, this morning we're asking this Court to reverse the District Court's order finding that counsel provided ineffective assistance in connection with defendant's rejection of an attractive plea offer, which he rejected in favor of a trial where he was convicted and received a substantially higher sentence after being convicted at trial than he would have received under the plea agreement. Before I'd like to talk about this case in three stages, first of all, I'd like to talk about counsel's perspective. Could you get a little closer to the mic, please? Thanks. First, I'm going to address counsel's perspective at the time because we think that that's probably one of the main issues here. Counsel's conduct is judged from counsel's perspective at the time. Then I'd like to discuss the prejudice finding. Then I'd like to discuss the deficient performance findings. So let's start with counsel's perspective at the time. As this Court knows, that's how we judge counsel's performance, from his perspective at the time. You look at what counsel knew at the time. There's one very, very important fact. The defendant proclaimed his innocence in the most vehement way. He told counsel that a person who lived with him, was obsessed with him, was a talented electronics hacker, and secretly installed a phone line in his house and committed these offenses. That's what he said. That's Joint Appendix Volume 1, pages 117 to 119. So that's what we start with. Somebody else did it. Somebody else did it. And he was vehement about it. He was steadfast about it. And he concocted this whole fanciful story, identifying this other perpetrator by name. And then he told counsel he would not plead guilty. Counsel testified at no point, at no point, did he think the defendant would plead guilty. At the hearing in this case, Remind me, what was counsel's experience level at the time? Counsel had been a very experienced federal attorney. He'd worked on the panel for getting criminal cases where FPD could not take it. He'd done a lot of federal work. I thought I noticed that he'd only negotiated six federal pleas at the time. Is that right? No, there were a lot more. And I think at the hearing, the FPD introduced maybe nine other cases where he had negotiated pleas. So he was a pretty experienced attorney. He's been around a long time. Are we talking deficient performance or prejudice? I think you started with prejudice. And, you know, I guess this is the first case I think I've sat on where a district court found prejudice in an ineffective assistance of counsel case. So, you know, two unicorns and one warning for us. But, you know, there was a hearing, and Judge Crabtree had the testimony of Mr. Kern and was persuaded that he would have accepted the offer. And he did accept that offer, and he pled guilty in open court. So we have that data point. But don't we have a credibility, clear air type situation here on prejudice? Because, you know, the district court sat through the trial and, you know, observed this particular defendant and credited his testimony that he would have taken this different strategy if it had been properly presented to him. Well, we think these are findings of law that are based on a mixed standard, mixed findings of fact and conclusions of law, and the district court erred. The court referenced the defendant's testimony about he would have taken this deal. Your Honor, that is a post hoc statement that this court in Dominguez said courts should not rely on. We look at the contemporaneous and objective evidence. We don't look at what the defendant says he would have done after he's been convicted and after he rejected the plea and after he gets a huge sentence that he wouldn't have gotten had he taken the plea. So Dominguez says his say-so is not enough. So we just reject that out of hand. And you're saying that's clearly erroneous because it's a factual finding, isn't it? Well, it's a factual finding that the defendant says he would have taken the plea. That's a factual finding. But this court says you can't rely on that because the defendant's say-so is not enough. That's this court's words. Isn't the conclusion that he would have taken the plea, isn't that the factual finding? I mean, you're adding another word in there. It's the court concluded he would have taken the plea. I mean, that's not a legal conclusion. Well, it's a factual finding, but it's a legal conclusion mixed in with that because in order to make the prejudice finding, the court has to find based on the objective and contemporaneous evidence that the defendant would have taken the plea. That's one of the facts necessary to find out if he was prejudiced, which is the legal conclusion, right? Well, that's correct. The legal conclusion comes from the facts, and the facts have to be based on the objective and contemporaneous evidence. That's this court's case law. That's why this court says the defendant's say-so is not enough, that he would have taken a plea. So are you telling me that the district court's finding that he would have taken the plea is subject to de novo review by us? Yes. It's a mixed question of finding a fact. It's a finding of fact and inclusion of law, and it's subject to de novo review. This court can look at that legal ruling all over again, yes. If we prevent courts from, you know, this is a counterfactual, in effect. It's a retrospective decision, but your position dooms 99.999% of these cases because how in the world is the defendant that's getting deficient advice to be smart enough to create a record that will be additional to whatever he says a year or two later, in a hearing like this? I mean, it's, you know, how would anybody, except maybe by just dumb luck, generate something that would be contemporaneous evidence to support a post hoc assertion that he would have taken it? It just seems logically almost impossible to expect a defendant who's getting bad advice to ask a question or somehow exhibit some conduct that later on we can credit as a showing of additional evidence that he would have taken the plea. That just seems like a circle of doom. Well, Your Honor, your argument really is not with us. It's with the Supreme Court. In Lee v. United States, the court said that courts like this should look to contemporaneous evidence to substantiate a defendant's expressed preferences for trial or plea rather than post hoc assertions from a defendant. We're just asking this court to do what the Supreme Court says the court should do. Does the bad advice itself weigh in at all here? Because you have an assertion and a finding by the district court that you had a six-minute discussion about a complex issue that substantively misdescribed the 11C1C process. And does that weigh at all as to, I mean, is that contemporaneous evidence that maybe he would have had a different decision had the advice been correct and thorough? The advice given at the time definitely constitutes contemporaneous evidence because that's the evidence that exists at the time of the plea. So yes, you can look at what the defendant may have thought based upon the advice he was given. But you also have to look at the fact that he vehemently proclaimed his innocence. Let's talk about that. There was contrary evidence before the district court because the district court had an expert who testified. And the expert, I think, is a fair description of the testimony would be, I've negotiated 240 of these, something along those lines. And in so many of these cases, the client tells me, I didn't do it. I'm innocent. Somebody else did it. And there are lots of reasons why they do it. They do it because they're ashamed. They do it because they think if they admit it, I won't try as hard for them, these things. So what you have is the profession of innocence. But then you have additional evidence before the district court that would allow the district court to disregard the profession of innocence in its discretion, don't you? Well, the answer to that question is yes and no. Yes, there's evidence before the district court. The district court can consider the evidence available to it. But caveat, the district court has to consider the evidence in light of the case law that tells the court how to consider that evidence. And the Supreme Court tells us in Harrington, quoting, courts may not indulge in post hoc rationalization for counsel's decision making that contradicts the available evidence of counsel's actions. So the court can't go into post hoc rationalization and say, oh, the court should have done this. But that goes back to whether it was deficient performance, not whether there was some kind of prejudice. Because your prejudice argument is, well, he wasn't prejudiced because he was never going to take it anyway. The evidence showed he was never going to take it. But the evidence also showed that his profession of innocence may have meant nothing to an experienced attorney. Well, this was an experienced attorney. This was an experienced attorney. There was at least an undertone in the district court's decision that this attorney was not experienced to the level of his expert. And also that the advice was deficient. Well, we would take exception with the characterization that the attorney here was not experienced. He was experienced. Granted, there was a, quote, expert who was a member of the defense bar in Topeka in Kansas City who testified. But experienced attorneys can have different views on what it takes to get somebody to take a plea and what advice should be given to somebody who resists taking a plea. And one experienced attorney could say, wait a minute. This guy is telling me some other dude did it. And he's proclaiming his innocence to me. He's told me he's not going to take a plea. I never, ever thought he would take a plea. A reasonable attorney can say, based on that, I'm going to conclude he's not going to take a plea. Well, you're almost saying that even the consideration of Bell's testimony, the expert, that the judge committed error by relying upon Bell. Now, that is certainly intruding upon the essential roles of a trial judge in finding facts. I mean, that's what you're saying, is that the judge should not have relied upon Bell. Well, we are saying that. Because the court, this court, the case law says. So you're saying we look at the trial judge's reliance upon Bell to no vote? We're saying that Bell's testimony doesn't really have much, doesn't really inform the issues at play here, which is whether counsel acted reasonably. Granted, a reasonable counsel could have acted differently, but that's not the only way that a reasonable counsel could act. A reasonable counsel could say, hey, please take this plea. This is in your best interest. Another reasonable counsel could say, OK. Is the determination of a reasonable counsel to do a question of fact only? No, it's not. It's also informed by the presumption that counsel acts reasonably. That's what Strickland says. There's a presumption that counsel acts reasonably. The court just didn't even indulge in that presumption. The court looked at everything to no vote, used post hoc rationalizations, came up with its own counterfactual scenario. If a trial judge says a reasonable defense attorney would have acted as Bell says, rather than as Francis did, that, you say, is subject to de novo review by this court? Well, that's what this court, it's a mixed question of law and fact. The questions of law are subject to de novo review. That's what we're saying. And Strickland has a presumption that counsel acts reasonably. The court should indulge the presumption. The court here never indulged the presumption. The court got an expert to say, oh, another reasonable counsel could have taken another reasonable view of the representation. And based on that view, I accept that view instead of this view, even though there was plenty of evidence for this view over here. That's what happened. The court did not presume counsel's performance to be reasonable from counsel's perspective at the time. And the perspective was that the defendant said he was innocent. Some other dude did it. He was not going to enter a plea or take a plea. And he wanted a trial. What was the purpose of the six minute meeting? To discuss the plea. I see. I see. Yeah. I guess the question that falls from there, if he wasn't willing to take a plea deal, why did he meet with his lawyer to discuss a plea deal? What was the meeting would have no? Well, because the deal was received and a reasonable counsel would discuss a plea offer that was received. That was his duty. And he discussed it with him. But he thought he needed to discuss it. I know it's his duty to present it. But the defendant doesn't have a duty to have a meeting to discuss a plea deal that he has no intention of taking. But they're in the same room. I mean, they're in the same room. They're discussing the case. They're preparing for trial. And the counsel is going to bring up the plea offer. And they're going to have a discussion about it. Do you think that could that be considered some contemporaneous evidence that he might have made a different decision if he'd been properly advised? No, because at no time did he ever tell counsel he wanted to enter a plea. At no time did counsel think he would enter a plea. And he maintained his innocence and said some other dude did it, not him. OK. So even though he was willing to discuss a plea deal, you don't think that has any weight, I guess? We think it's just part and parcel of normal representation. We don't think it makes one fact more or less probable, including the fact that he was amenable to taking a plea. I mean, they discussed a plea. It was on the table. I'll give you some rebuttal time. Was there any evidence that when pleas are presented and your client has previously told you that they're not interested in entering a plea, that it justifies a less intensive discussion about the offered plea? Yes. Bert V. Titlow. Bert V. Titlow. No, that's a case. Was there evidence in this case? That what? I'm sorry. I misunderstood the court's question. Was there evidence in this case that in counsel's experience, when his client had previously told him they didn't want to take a plea and that they wanted a trial, that it justified a less intensive discussion about plea offers? No, there wasn't such evidence. But a less intensive discussion would be justified under the Bert V. Titlow case that we cite in our briefs. You didn't get to the DC Circuit's Knight case, but that case and Judge Crabtree here looked at the 24 years that he got versus the 10 years in the plea bargain. So a substantial reduction in that time served. I guess in looking at it just from a high level, a reasonable defendant looking at saving 14 years in jail, there's some sense that a rational defendant would want to discuss that and consider it very seriously. Well, point well taken. But in this case, the defendant didn't want a plea. He wanted a trial. He never said he wanted a plea. He said some other dude did it. He said this other person who did it was a real person who lived in his house, who was obsessed with him, who hacked his home electronics and secretly installed a phone line in his house and did it. And he wanted counsel to present that defense at trial to exonerate him. So the time had nothing to do with his decision to reject the plea. The fact that there was this big disparity in the offer and the trial had nothing to do with his decision. He didn't do it. That was the problem. He proclaimed his innocence. That's what counsel was working from. That's why we say the perspective is absolutely key. The district court ignored counsel's perspective at the time completely. So would it be your position that an attorney would run into ethical issues if their client had previously told them that they wouldn't accept a plea because they didn't do it and continued to profess their innocence? And would it be a problem for the attorney then to advise them you should really consider this plea because you're looking at 24 years and this is going to get you a 10-year deal? No, it wouldn't be. That would not be an ethical problem. That's all part of representation. I mean, the attorney's been informed that the client didn't do it. Right. They vehemently protested and said they were innocent. Right, right. I mean, how can the attorney in good conscience try to pressure them into taking a plea by continuing to discuss it? Well, you know, that's an interesting point, and it goes both ways. Because Judge Crabtree assumed that very thing, that an attorney should pressure his client to take a plea he's not interested in taking if it benefits him. That's the whole assumption in this order, in this district court's order. So that's one way of looking at it. The court's question, is it an ethical problem? We would say no. Simply informing the defendant about the consequences of entering a plea or not entering a plea, that's part and parcel of competent representation. In fact, the lawyer has a duty to inform the defendant for situational awareness purposes about entering a plea. But Judge Crabtree is the one who assumed here that an attorney should try to convince him to take it. That's the basis of the Knight case. That the court, the attorney, if the defendant gets a good deal, the attorney should try to convince him to take it. That's where we are. All right, counsel, thank you. I will give you a little bit of rebuttal. Thank you. Good morning. May it please the court. Kayla Gassman for the appellee, Jonathan Kern. I am not sure how the government's disclaiming of the clear error standard of review isn't fatal to its case. The government's arguments turn on its position that Mr. Kern would not have pleaded guilty under any circumstances. The district court made an express factual finding to the contrary. This court has said many times that when there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. The government has disclaimed that it has even attempted to meet the clearly erroneous standard on that point. And it was well supported by the evidence that the district court heard from live witnesses at the evidentiary hearing. Specifically, the district court found that Mr. Kern would have been willing to enter a guilty plea had he been correctly advised. The district court made a factual finding that Mr. Kern's sticking point with accepting the plea at the time of the negotiation was related to his reluctance to personally describe and admit the facts, because counsel told him erroneously that he would have to personally supply the factual basis for a plea, which the government I now understand to concede is not accurate. That is not required. Counsel, let me tell you what I was confused by in the record. In some ways it sounds like the defendant thought the offer was much like an Alford plea, where he said, yes, that's the government's evidence.  But it was not to be an Alford plea. Correct. It was not to be an Alford plea. This case is not about Alford pleas, and it has never been about Alford pleas. But isn't there some evidence in the record that the thought was he could say, I accept that that's the government's evidence. So the point about the government supplying the factual basis was independent, and the district court found that it was independent of the requirement to enter a guilty plea. So the discussion about the government supplying the factual basis, so the government saying this is the evidence that we would present that would prove beyond a reasonable doubt that the defendant committed this offense, the defendant can say, yes, I agree that would be sufficient evidence, and then the defendant pleads guilty, that's not an Alford plea. The guilty plea in those circumstances, the defendant entering a guilty plea is an admission of guilt. This court's case law, we discuss Wade, we discuss Brown, the district court relied on those cases. When you take an Alford plea, the trial judge say, that's substantially an effective admission of guilt by the judgment of conviction. I think what would also accompany an Alford plea is the defendant saying at a hearing, at a hearing, at the change of plea hearing, or in the plea agreement, that he maintains his innocence. And that was not what was happening. Is that the bright line between this and an Alford plea? Yes. An Alford plea, the defendant says on the record, I'm not guilty, but I think they have enough evidence to convict me. Correct. And I think the factual basis would also look different. And is there authority for that? I believe that's what Alford itself says, and that's what Alford is about. I haven't read Alford since 1986. I would say, judges, we don't have a lot of experience with Alford pleas, but that's certainly what Alford says. And the factual basis also looked extremely different in Alford. In Alford, there were actually witnesses that testified at the change of plea hearing about what they would say at trial. It was not just this brief where the government summarizes the evidence. So an Alford plea would look very different. That was not what was being discussed, and that was not what was on the table. With respect to the prejudice, the district court relied, did credit, and this is a credibility finding, clearly, credited Mr. Kern's testimony that had he been correctly advised, he would have accepted a plea. But that was not the only evidence, and those were not the only findings that the district court made. The district court also made a factual finding, again, that his sticking point was this personally requiring, personally providing the factual basis. Saying, I sent this email. I took this picture. That's what he didn't want to do. And the district court found that that was his sticking point. And the district court further found that trial counsel could have easily alleviated that sticking point by simply providing correct advice that Mr. Kern was not required to personally supply the factual basis. And so when there's that direct connection between the wrong advice and the defendant's decision making, I think that's exactly when the Supreme Court's decision in Lee tells us that there is prejudice. Because what we're doing in the prejudice inquiry is looking at what would have happened but for counsel's deficient performance. Yeah, I think your biggest problem in my mind in this case is Lee and then the Watson, you know, the Tenth Circuit cases that talk about the need for contemporaneous evidence. We can't rely solely on post hoc proclamations that I did it. And in this case, whether that's a good rule or a bad rule, I have some problems with it for the reasons I was discussing with Mr. Brown. Because you don't know what you don't know when you're in a conversation with a lawyer giving you bad advice. But what here gets us over the Lee-Watson problem of post hoc proclamations? So I think, in my argument, in my view, is what I was just saying is contemporaneous evidence. So the only post hoc testimony here is Mr. Kern's testimony at the 2255 hearing. Certainly that is a testimony the district court can credit. But the contemporaneous evidence includes the district court's finding that Mr. Kern's sticking point was that he was reluctant to admit personally and personally supply the factual basis and the direct impact that counsel's bad and wrong advice had on that decision making. Lee tells us, we look at the contemporaneous evidence of the defendant's decision making. So we look at what was important to the defendant at the time that he was making this decision and the effect of counsel's incorrect advice on that decision making. That's contemporaneous evidence. And the district court said that here and found that here. And additionally, the district court made a factual finding that while trial counsel, Francis, did not think Mr. Kern would be guilty, he wasn't sure of that until the Lafler colloquy, which was literally minutes before the trial. So counsel was not sure that Mr. Kern wouldn't be guilty until just before the trial began. And the district court noted that and found that that was additional contemporaneous evidence that Mr. Kern was admittable to a guilty plea had he been correctly advised. All of that is contemporaneous evidence. In addition, I believe Judge Timkovich brought up the sentence disparity. That is additional contemporaneous evidence. This court has said multiple times that this prejudice analysis is largely an objective one and that the sentence disparity or the disparity in outcome under an offered plea versus what a defendant faces at trial is contemporaneous evidence because that decision has to be rational. I would point this court towards Dominguez, towards Hurd versus Addison, both of which we discussed in our briefs, which in those cases I think only look at the disparity between the offer, what happened under the plea versus what likely would happen at trial. What was the evidence of his knowledge of what would likely be his sentence if he was convicted at trial? I don't know that we have a lot of evidence of that. I don't know that that was delved into at the evidentiary hearing. To me, that causes further question in my mind, in addition to what the district court found about deficient performance, is that whether there was adequate advice about the consequences of not entering the plea and evidence that would be introduced at trial, but that was not part of the testimony that was presented. But what was presented is that Mr. Kern, and what the district court did find, is that Francis did not provide sufficient advice about the C1C offer, and particularly the certainty of it, because he told Mr. Kern that while it was for a 10-year deal and told him it was binding, he also told him the district court didn't have to accept it and a 10-year sentence wasn't guaranteed, without further explaining that it was binding in the way that if the court didn't accept the 10 years, didn't give him the 10 years, that he would be allowed to withdraw the plea. So certainly there's very clear evidence and a very clear finding from the district court that Francis did not adequately advise Mr. Kern about the outcome under the plea and the certainty of the outcome under the offered plea. I do want to address this point about the alternative suspect. It's clear if you look at what Mr. Kern says about that in his pro se on counsel 2255, he's pointing to an alternative suspect for the distribution counts. He has never pointed to an alternative suspect to the possession count, which is the count that he pleaded guilty to. So I just don't see the relevance. And again, the court had an evidentiary hearing, heard multiple witnesses, made credibility findings, made factual findings, and none of that is affected by the fact that at different times in the case that Mr. Kern may have had a different theory of the case. Did counsel... Did Mr. Kern's counsel at the evidentiary hearing ever draw a distinction about the protestations of innocence on a count-by-count basis? No. No, he did not. And I do want to address this point about protestations of innocence. No court, the government cites no authority, and to my knowledge, no court anywhere at any level has ever held, suggested, hinted, or waved at the idea that the defendant has to do or say something to trigger defense counsel's obligation to provide complete and accurate advice about a plea offer. The governing case law, the controlling case law, is absolutely to the contrary. The Supreme Court has made very clear that it's the government making a plea offer that triggers defense counsel's obligation to fully advise the defendant about the advantages and disadvantages of that offer. Because remember, whether to plead guilty is one of the only strategic decisions that is left to a defendant to make personally. He has to make that decision. Counsel cannot make it for him. But what counsel's obligation is is to provide the defendant with enough information about the plea offer, about the consequences of accepting or rejecting it versus going to trial, so that the defendant can make an informed decision about whether or not to accept it. But again, no court, the government cites no authority, and to my knowledge, there is none saying that a protestation of innocence absolutely relieves counsel of the obligation, especially when the government makes a very favorable offer, which this one was. I do also think it's important, the six-minute finding, I think, is important. The district court made a separate finding that spending six minutes in the circumstances of this case was deficient performance, and specifically that when what was on the table was a very favorable offer for a C1C, where Mr. Kern would not get one day more than 10 years, or he would be allowed to withdraw the plea, which was not told to him, in light of the overwhelming evidence of his guilt, which we don't have any evidence whether that was explained to him, whether he was advised of that, and in the very extremely personally fraught circumstances that Mr. Kern was in, where he was considering whether to plead guilty to a child pornography offense involving his own minor daughter. And the district court looked at those circumstances, those three things, and said, in these circumstances, six minutes is just not enough to discuss the plea offer, the advantages and disadvantages of it, and the process for entering a plea in light of these personally difficult circumstances. That was all well-supported by the district court's findings, by the record, and the government has now challenged that on appeal. I do want to just return briefly to this idea that the district court's not allowed to consider Mr. Kern's testimony at the 2255 hearing, which I think is what the government said today, that that post-talk testimony is something the district court, I guess, should just put out of its mind. This court has rejected that. I mean, this court has said, first of all, Hill v. Lockhart is a Supreme Court case we discussed in our briefs. In that case, the defendant didn't make that sort of post-talk statement, and the Supreme Court said, you lose just because we don't have that. So it is a necessary component of this type of prejudice claim. We agree it's not sufficient, but in this case, the district court didn't only rely on that testimony. The district court also relied on the other contemporaneous evidence, in particular, about what Mr. Kern's particular sticking point was, the effect of counsel's wrong advice on the points that were important to Mr. Kern, and the fact that trial counsel was not sure that Mr. Kern would not plead guilty until just moments before the trial. And you do agree that if it's only post-talk protestation that he would have taken, that's not enough? Yeah, I think it's clear a post-talk testimony isn't enough on its own. I think it's necessary, but not sufficient. But it certainly is part of the analysis. It's part of what the district court can look at. And with the district court, another reason the district court credited that testimony in this case is because the district court made a specific factual finding that the contemporaneous evidence comported with Mr. Kern's testimony at the evidentiary hearing. So the contemporaneous evidence the district court also made factual findings about supported Mr. Kern's testimony. So all of that together supports his testimony that he would have accepted the plea had he been correctly advised. Is there any other area of law where we require more than the testimony of a witness to make a determination? Not that I'm aware of. I mean, the district court acknowledged this is a little bit of an awkward area because what the defendant did at the time is colored by the bad advice. So in a sense, we're looking at sort of a counterfactual, what he likely would have done had he been correctly advised. Honestly, I think the courts have said that this post-talk testimony is not enough because they don't want the relief to be too available. But again, the district court absolutely did not rely only on that testimony but supported it with other factual findings. All right, any other questions? Thank you, counsel. Could you give Mr. Brown two minutes, please? Thank you for the extra time, Your Honor. I'd like to just talk about a couple matters. First of all, counsel brought up this notion of the defendant's main sticking point. His main sticking point, the court found, was his unwillingness to admit the facts of his charged offense in open court and the district court that counsel could have easily alleviated this concern had he informed the defendant that he didn't have to admit the facts personally. So that's what the district court relied on to find that there was this narrow path that the defendant could, that was available for the defendant to enter a guilty plea, that narrow path being that the government could give the factual basis for the defense, the defendant could just say, I'm guilty and agree that that's sufficient, and that way he would... You're not contesting that, are you? No, we're not contesting that. But what we're saying is that that narrow path really didn't exist in this case because the defendant's main sticking point was that he didn't want to admit his factual guilt. But even with that narrow path described by the district court, the defendant would have had to admit his factual guilt. There was no way to enter a guilty plea, a non-Alford type guilty plea in this case, without the defendant admitting his factual guilt because a guilty plea is necessarily an admission of all the factual allegations in the count that you're pleading guilty to. So that goes to the prejudice inquiry. The district court's narrow path to the guilty plea really didn't exist. Because the defendant would have had to admit his factual guilt in order to enter a non-Alford type guilty plea. There's no way that the district court's narrow path could alleviate a defendant's concern. So he wouldn't have pleaded guilty. That's another part of our prejudice argument that I didn't get to in my prior presentation. I see that my time is up. So what if... Can I ask one question? Of course, yeah. So what if the defendant, what if the government had gotten up, described their evidence, and to the district court, and the defendant had risen and said, Your Honor, I agree that the government can present that evidence, and I have no evidence to counter it, and that they will be able to prove my guilt beyond a reasonable doubt, so I plead guilty. Good enough? That's good enough for a guilty plea, but it's also, and this is the key point, it's also an admission of every factual allegation in the indictment as a matter of law. Even if you say, I admit they have this, it's still an admission of factual guilt. Isn't that, in essence, what the district court found he would have said? And ultimately, what he did, because he entered a guilty plea, didn't he? You know, that's not part of the contemporaneous evidence, and we don't think that's even a relevant consideration here. He did end up entering a guilty plea. No, but part of your argument just now was like this is some kooky thing that was never going to happen, that wasn't part of the pathway, never existed. But it did exist. Well, it did. We gently disagreed with the court. It did not exist. He could not have entered a guilty plea without admitting his factual guilt, and the district court found that his main sticking point is that he didn't want to admit his factual guilt, but in order to enter a guilty plea, he would have had to do that. The fact that he enters a plea at a later time after he's been convicted... So I agree with you. I'm not asking to like set the fact that he did it aside, but I mean, you just like... I took your argument as being that it wasn't ever going to happen. It wasn't, because the narrow path to a guilty plea did not exist. The court's method, that path, could not alleviate the defendant's main sticking point. He didn't want to admit his factual guilt. He would have had to admit his factual guilt if he entered a guilty plea, even under the district court's narrow path. That's our point. All right, counsel. Thank you. Your case is submitted. We'll take a 10-minute break or so, and we'll reconvene with U.S. v. Hayes.